TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | : | |
|---|---|---|
| OPINION | : | |
| | : | No. 24-701 |
| of | : | |
| | : | October 31, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| KARIM J. KENTFIELD | : | |
| Deputy Attorney General | : | |

---

SANDRIDGE PARTNERS, L.P., has applied for leave to sue MICHAEL SULLIVAN in quo warranto to remove him from public office on the Board of Trustees of the Tulare Lake Reclamation District No. 761 (Reclamation District). The application asserts that Sullivan, while serving as a Reclamation District Trustee, assumed a second and incompatible public office on the Board of Directors of the Tulare Lake Basin Water Storage District (Water District), in violation of Government Code section 1099, and by doing so forfeited his seat on the Reclamation District Board.

We conclude that there are substantial legal issues as to whether Sullivan's two Board seats are legally incompatible, and as to whether he can be removed from the Reclamation District Board even though he recently resigned from the Water District Board. We further conclude that the public interest will be served by allowing the proposed quo warranto action to proceed. Consequently, the application for leave to sue is GRANTED.

## BACKGROUND

This opinion concerns two public entities that manage water resources in the Central Valley. First, the Tulare Lake Reclamation District No. 761 was organized under Water Code section 50000 et seq. Like other reclamation districts, it has statutory

1

24-701

authority to construct and operate public works relating to reclamation and irrigation.[1] The Reclamation District is governed by a five-member Board of Trustees.[2]

Second, the Tulare Lake Basin Water Storage District was established under Water Code section 39000 et seq.[3] The Water District consists of thousands of acres of "highly fertile farm land located in the Tulare Lake Basin."[4] Its boundaries overlap with the Reclamation District's. Like other water storage districts, the Water District can "execute approved projects 'for the acquisition, appropriation, diversion, storage, conservation, and distribution of water.'"[5] It is governed by an 11-member Board of Directors.[6]

Michael Sullivan has served simultaneously as a Reclamation District Trustee and a Water District Director. We are told that he joined the Reclamation District Board in 2019. He then assumed office on the Water District Board in 2021.

Sandridge Partners, L.P., a landowner within the Reclamation District, argues that Sullivan's two Board seats are legally incompatible public offices under Government Code section 1099. Section 1099(b) provides that a public officeholder who assumes a second, incompatible public office thereby forfeits the first office held, and that this forfeiture is enforceable through an action in quo warranto. Based on the alleged incompatibility, Sandridge requests our permission to file a quo warranto lawsuit in superior court seeking Sullivan's removal from the Reclamation District Board. In opposition, Sullivan argues that the Legislature has authorized the dual officeholding here, and that any conflict is moot because he recently resigned from the Water District Board. Sandridge replies that the Legislature has not authorized the dual officeholding, and that the issue is not moot because Sullivan forfeited his seat on the Board of the

---

[1] See 88 Ops.Cal.Atty.Gen. 239, 239 (2005) (a reclamation district can "acquire and operate irrigation systems; acquire, maintain, lease, and sell real and personal property; construct and operate drains, canals, levees, dams, water gates, pumping plants, and other works relating to reclamation and irrigation; fix and collect charges and fees; employ engineers and other professional staff; and construct and operate ferry boats, bridges, roads, and related facilities for access to land and works within the district," citations omitted); 83 Ops.Cal.Atty.Gen. 205, 205-206 (2000).

[2] See Wat. Code, §§ 50002, 50601.

[3] See *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.* (1973) 410 U.S. 719, 721.

[4] *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, *supra*, 410 U.S. at p. 723.

[5] *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, *supra*, 410 U.S. at p. 723, quoting Wat. Code, § 42200.

[6] 106 Ops.Cal.Atty.Gen. 14, 14 (2023).

2

Reclamation District—not the Water District—and he continues to serve on the Reclamation District Board.

## ANALYSIS

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[7] Where, as here, a private party seeks to pursue a quo warranto action in superior court, that party (known as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent. In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[8] Here, the answer to all three questions is "yes." We therefore grant leave to sue.

### 1. Availability of Quo Warranto Remedy

Under Government Code section 1099(b), the forfeiture of an incompatible public office is "enforceable pursuant to Section 803 of the Code of Civil Procedure."[9] That section authorizes an action in the nature of quo warranto to remove a person who unlawfully holds any public office.[10] A public office includes membership on a government board or body, such as a reclamation district or water storage district board.[11]

Sandridge argues that Sullivan forfeited his public office on the Reclamation District Board by assuming a second, incompatible office. On that basis, Sandridge seeks to remove Sullivan as a Reclamation District Trustee. Quo warranto is therefore an available and appropriate remedy.

---

[7] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[8] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[9] Gov. Code, § 1099, subd. (b).

[10] Code Civ. Proc., § 803.

[11] See Gov. Code, § 1099, subd. (a); 90 Ops.Cal.Atty.Gen. 24, 26 (2007) (cataloging prior opinions determining "that the directors of a variety of public water agencies are officers for purposes of the incompatible offices doctrine"); e.g., 85 Ops.Cal.Atty.Gen. 60, 61 (2002) (municipal water district); 82 Ops.Cal.Atty.Gen. 68, 69 (1999) (county water district); 76 Ops.Cal.Atty.Gen. 81, 83 (1993) (special act water district, irrigation district); 75 Ops.Cal.Atty.Gen. 10, 13 (1992) (California water district). Sullivan has not disputed that the board seats at issue here are both public offices.

## 2. Substantial Issue Regarding Incompatibility

We next examine whether there is a substantial issue of law or fact as to the incompatibility of the two public offices in question. Section 1099(a) provides that "[a] public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible." That prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[12] Upon a finding that two offices are legally incompatible, "a public officer shall be deemed to have forfeited the first office upon acceding to the second."[13]

Relevant here, two offices are incompatible if "there is a possibility of a significant clash of duties or loyalties between the offices."[14] It is not necessary that a conflict has actually occurred; it is enough that a conflict *might* occur in the regular operation of the statutory plan.[15] Nor is it necessary for a clash of duties or loyalties to occur in all or in the greater part of the official functions.[16] Rather, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[17]

There is at least a substantial issue here as to whether the offices of Reclamation District Trustee and Water District Director are legally incompatible; indeed, Sullivan does not dispute that a person holding both these offices could encounter a conflict of interest.[18] For more than five years, the two Districts have been adverse parties in litigation.[19] Both Districts receive water from the Kings River as members of the Kings River Water Association. In 2018, the Association and some of its members, including the Water District, sued the Reclamation District and Sandridge. The lawsuit alleges that the Reclamation District and Sandridge are improperly using Kings River water outside the Association's service area, resulting in less water for other Association members such as the Water District.

---

[12] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

[13] Gov. Code, § 1099, subd. (b).

[14] Gov. Code, § 1099, subd. (a)(2).

[15] 98 Ops.Cal.Atty.Gen. 94, 96 (2015).

[16] *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 641-642.

[17] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[18] See Gov. Code, § 1099, subd. (a)(2) (offices are incompatible if "there is a *possibility* of a significant clash of duties or loyalties between the offices," italics added).

[19] Our description of the litigation is based on the allegations in Sandridge's quo warranto application, which Sullivan has not disputed.

We have previously concluded that the mere possibility of litigation between two entities renders simultaneous board service legally incompatible.[20] A dual board member, we explained, could face "substantial conflicts" in deciding whether one entity should sue the other, or in making litigation decisions that could adversely affect the other entity's interests.[21] Here, litigation between the Reclamation District and the Water District is not only possible, it has actually arisen. Given the "substantial conflicts" a dual Board member could face in deciding whether and how to litigate such a suit, there is at least a substantial issue as to whether the positions are incompatible.[22]

As just one example, some of the plaintiffs in the ongoing litigation made a settlement offer that would require the Reclamation District to stop delivering Kings River water to Sandridge for use outside the Association's service area (a settlement Sandridge characterizes as a "total victory" for the Water District and a "total defeat" for the Reclamation District). In his role as a Reclamation District Trustee, Sullivan recently cast the deciding vote to accept the settlement—despite advice from the Reclamation District's general counsel that he was conflicted and should recuse.[23] In voting on an agreement that could affect both Districts' interests, Sullivan may have "face[d] divided loyalties."[24]

Beyond the litigation itself, Sandridge alleges a conflict because both Districts receive water from the Kings River pursuant to the same contract. As we have previously explained, where two entities "may make contracts with" each other, a person serving concurrently on both entities' Boards may "have to serve two masters" in contract negotiations.[25] The potential for a conflict may be particularly high where, as here, the two entities are competing for a limited resource: Kings River water. Indeed, where two entities can "contract for the purchase . . . of water with third parties, or with each other," we have previously concluded that "conflict may be unavoidable."[26] In our view, these

---

[20] See 68 Ops.Cal.Atty.Gen. 171, 173 (1985); 73 Ops.Cal.Atty.Gen. 183, 186 (1990) (similar in quo warranto context).

[21] 68 Ops.Cal.Atty.Gen., *supra*, at p. 173.

[22] 68 Ops.Cal.Atty.Gen., *supra*, at p. 173; see Wat. Code, § 50651 (the powers of a reclamation district are generally "exercised by the board"); *id.*, § 40658 (similar for water storage district).

[23] The general counsel's advice and Sullivan's vote on the settlement have been disclosed in public court filings.

[24] 106 Ops.Cal.Atty.Gen. 79, 91 (2023). We are told that the settlement is not yet final because Sandridge has raised objections to it in the superior court.

[25] 37 Ops.Cal.Atty.Gen. 21, 22 (1961).

[26] 55 Ops.Cal.Atty.Gen. 36, 38 (1972) (explaining that the entities may be "competitive"

(continued…)

24-701

potentially "significant clash[es] of duties [and] loyalties" give rise to a substantial issue as to whether the two offices are incompatible.[27]

As noted, Sullivan does not dispute that the test for incompatibility is satisfied here. Instead, he argues that the Legislature has abrogated the incompatible-office prohibition in this context.[28] Under Government Code section 1099(a), a public officer may simultaneously hold otherwise-incompatible public offices if "simultaneous holding of the particular offices is compelled or expressly authorized by law." For example, where a state statute provided that a local transportation commission "may include members of the board of supervisors," we concluded that a supervisor could serve on the commission.[29] Even if those two offices were incompatible under general principles, dual officeholding was "expressly authorized by law."[30]

But Sullivan has not identified any law expressly authorizing Reclamation District Trustees to serve as Water District Directors, or vice versa. Instead, he argues that dual officeholding is highly likely because the Water Code requires Board members for both Districts to be area landowners.[31] Given that the Reclamation District's boundaries lie entirely within the Water District's, he contends that the statute's eligibility requirements compel simultaneous Board service.

As Sandridge notes, however, this argument appears to depend on there being so few area landowners that both Boards cannot be filled without overlapping members.

---

or "antagonistic" in such dealings); see also 76 Ops.Cal.Atty.Gen., *supra*, at p. 85 (acknowledging potential conflict where agencies could "contract for the purchase, development, or sale of water with third parties or with each other").

[27] Gov. Code, § 1099, subd. (a)(2); see 85 Ops.Cal.Atty.Gen., *supra*, at p. 200 ("Only one potential significant clash of duties or loyalties is necessary to make offices incompatible").

[28] See *Am. Canyon Fire Prot. Dist v. Cnty. of Napa* (1983) 141 Cal.App.3d 100, 104 (even if two offices are incompatible under general principles, "[t]here is nothing to prevent the Legislature . . . from allowing, [or] even demanding, that an officer act in a dual capacity," internal quotation marks omitted).

[29] 102 Ops.Cal.Atty.Gen. 64, 68 (2019).

[30] Gov. Code, § 1099, subd. (a); 102 Ops.Cal.Atty.Gen., *supra*, at pp. 68-69; see also 102 Ops.Cal.Atty.Gen. 39, 48 (2019).

[31] See Wat. Code, § 40307 (to serve as a water storage district director, a person must "be a holder of title within the district. If a holder of title to land is not a natural person, [it] may designate a representative . . . to be elected or appointed as a director"); *id.*, §§ 50601, 50014 (to serve as a reclamation district trustee, a person must be "a landowner or the legal representative of a landowner").

6

Yet Sullivan has not provided any information about the number of landowners in either District. Moreover, the Water Code allows a reclamation district landowner to designate a representative to serve as a trustee on the landowner's behalf.[32] Given that option, Sullivan has not explained why the same individual landowner would be required to serve on both Boards. For these reasons, there is at least a substantial question as to whether dual officeholding is "compelled" by the board eligibility requirements.[33]

Sullivan also cites a 1984 Attorney General opinion where we concluded that the director of a water district could serve simultaneously on the board of a county water agency.[34] The opinion analyzed a legislative amendment requiring two agency board members to be appointed from the agency's advisory council.[35] At the time of the amendment, the advisory council typically included water district directors.[36] Because "the Legislature could not have been blind to the historical practice," we determined that the Legislature intended to allow water district directors to serve on the agency's board.[37]

Sullivan argues that there is also a relevant historical practice here: in recent years, he reports, three other individuals have served simultaneously on the Reclamation District and Water District Boards. But Sullivan has not explained why such a practice would demonstrate the *Legislature's* intent to sanction dual Board service. For example, he has not cited any relevant legislation enacted during this period.[38] As a result, our prior opinion's reasoning does not appear to apply. Nor has Sullivan cited any other authority suggesting that past violations of section 1099 can excuse current ones.

Next, Sullivan argues that, even if his dual officeholding created a conflict, he appropriately managed it by recusing from Water District decision making.[39] But although some state laws allow conflicts to be managed through recusal, section 1099

---

[32] See Wat. Code, §§ 50601, 50014. Water District landowners who are not "natural person[s]" may also designate a representative for that District's Board. (*Id.*, § 40307.)

[33] Gov. Code, § 1099, subd. (a).

[34] See 67 Ops.Cal.Atty.Gen. 369 (1984).

[35] 67 Ops.Cal.Atty.Gen., *supra*, at p. 380.

[36] 67 Ops.Cal.Atty.Gen., *supra*, at p. 380.

[37] 67 Ops.Cal.Atty.Gen., *supra*, at p. 380.

[38] The statutes Sullivan primarily relies on—the Water Code's board eligibility requirements—were not enacted or amended during this period. (See Wat. Code, §§ 40307 (last amended 1990), 50601 (last amended 1953), 50014 (last amended 1963).)

[39] Sullivan does not allege that he has recused from conflicted decision making on the Reclamation District Board. As described above, Sullivan recently cast the deciding vote in that Board's decision to accept the litigation settlement offer.

7

does not.[40] Rather, when two public offices are incompatible, the conflicted officeholder may not escape the effects of the doctrine by choosing not "to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice."[41]

Finally, Sullivan contends that any conflict is now moot because he resigned from the Water District Board (his second assumed office) after this quo warranto application was filed. Sandridge replies that the dispute is not moot because, under section 1099(b), Sullivan was deemed to have forfeited his first assumed office on the *Reclamation* District Board—and should therefore have vacated that office instead of his seat on the Water District Board. Under section 1099(b), when "two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second."[42] Construing that language, we have explained that "a person who unlawfully holds two incompatible offices is not generally considered free to choose which office to retain; rather, the first office is ordinarily considered forfeited as a result of the person having accepted the second office."[43] "We frequently refer to this forfeiture as an 'automatic resignation.'"[44]

We are told that Sullivan first assumed office on the Reclamation District Board in 2019. There is therefore a substantial question as to whether he automatically forfeited that position the moment he assumed office as a Water District Director in 2021, regardless of whether he later resigned from the Water District Board. We have previously granted a quo warranto application where an officeholder had resigned from

---

[40] See, e.g., 64 Ops.Cal.Atty.Gen. 795, 797 (1981) (discussing the common law prohibition on public officials allowing private interests to conflict with official duties); 67 Ops.Cal.Atty.Gen., *supra*, at pp. 373-374 (discussing Government Code section 87100).

[41] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296; see also 106 Ops.Cal.Atty.Gen. 10, 12 (2023); 105 Ops.Cal.Atty.Gen. 69, 72 (2022).

[42] Gov. Code, § 1099, subd. (b).

[43] 95 Ops.Cal.Atty.Gen. 67, 73 (2012).

[44] 95 Ops.Cal.Atty.Gen., *supra*, at p. 73, fn. 29; see, e.g., 85 Ops.Cal.Atty.Gen., *supra*, at p. 61 (acceptance of second office "constitutes an automatic resignation from the first office"); 107 Ops.Cal.Atty.Gen. 71, 76, fn. 37 (2024) ("A person's assumption of the second incompatible office thus has the effect of an automatic resignation from, or vacation of, the first office").

8

the second office, but the application sought to remove him from the first.[45]  We see no reason to reach a different conclusion here.

### 3.  Public Interest in Favor of Authorizing Suit

Finally, we conclude that granting leave to sue will serve the public interest. Generally, the existence of a substantial question of law or fact presents a sufficient "public purpose" to permit an action in quo warranto, absent countervailing circumstances.[46]  Sullivan posits several such circumstances, but we are not persuaded.

First, Sullivan contends that his resignation from the Water District Board has eliminated any ongoing conflict, so litigation would serve no purpose.  But as explained above, the question whether Sullivan forfeited his position as a *Reclamation* District Trustee in 2021—notwithstanding his resignation from the Water District Board years later—is a substantial legal issue.  Judicial resolution of the dispute will therefore serve the public interest.[47]

Next, Sullivan argues that removing him from the Reclamation District Board could jeopardize the litigation settlement—a settlement he maintains will promote sustainable water management.  Sandridge strongly disputes the settlement's benefits.  It is not our role to evaluate the settlement's merits.  Rather, "we are concerned with ensuring that all public officials have undivided loyalties when performing their responsibilities."[48]  Where there is a substantial question as to incompatible officeholding, as there is here, the public interest is ordinarily served by allowing quo warranto litigation to proceed.

Finally, Sullivan argues that Sandridge is motivated by self-interest.  According to Sullivan, Sandridge seeks to remove him from the Reclamation District Board to enhance the influence of other Board members whom Sandridge prefers.  But we "normally do not attempt to assess the motivation of individual relators."[49]  Whether Sandridge "stands to

---

[45] See 95 Ops.Cal.Atty.Gen., *supra*, at pp. 72-73.  Because the officeholder resigned from the first office after we granted the quo warranto application, a court never ruled on the issue.

[46] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

[47] We need not decide here whether the public interest could ever favor denying a quo warranto application in analogous circumstances—for example, if an officeholder resigned from a second, incompatible office shortly after assuming the position.

[48] 87 Ops.Cal.Atty.Gen. 153, 156 (2004).

[49] 75 Ops.Cal.Atty.Gen. 112, 116 (1992).

9

benefit from [Sullivan's] removal or not, the public interest will be served by resolving whether [Sullivan is] validly holding office."[50]

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[50] 106 Ops.Cal.Atty.Gen., *supra*, at p. 20; see 95 Ops.Cal.Atty.Gen., *supra*, at p. 75, fn. 39; 87 Ops.Cal.Atty.Gen., *supra*, at p. 156.

24-701